UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SUSAN M. HUDEC,

                      Plaintiff,                      :

                                             :            **COMPLAINT**

         -vs-                                   :     Plaintiff Demands

                                                 A Jury on All
THE ROMAN CATHOLIC ARCHDIOCESE OF NEW
YORK d/b/a the Archdiocese Drug and Alcohol    :    Issues to be Tried
Prevention Program, and MICHAEL COPPOTELLI,

                                             :
                    Defendants.
-------------------------------------------------------------------X

       Plaintiff Susan M. Hudec, by her undersigned attorneys, as and for her complaint against the defendants, alleges as follows:

       1.     This is an action for damages and other remedies for age and disability discrimination, and for unlawful retaliation, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621, *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101, *et seq.*, and for promissory estoppel under New York common law.

       2.     The Roman Catholic Archdiocese of New York recruited plaintiff for a leadership position with the Archdiocese Drug and Alcohol Prevention Program (ADAPP) and induced her to withdraw her applications for leadership positions at other large institutions.  After learning that plaintiff suffers from multiple sclerosis, however, the Archdiocese denied plaintiff the promised position.  Asked by ADAPP managers to explain plaintiff's employment status, defendant Michael Coppotelli, the Archdiocese's

Associate Superintendent responsible for ADAPP, raised concerns about plaintiff's "shelf life."

3.      After plaintiff called Mr. Coppotelli and complained of discrimination, the defendants demoted plaintiff by hiring a younger person to take over most of her managerial responsibilities and assigning plaintiff to work as the younger person's assistant.

4.      The stress and humiliation caused by the defendants' discriminatory and retaliatory conduct made it impossible for plaintiff to return to work at ADAPP and contributed to a car accident that left plaintiff temporarily disabled.  Plaintiff had no choice but to seek employment elsewhere at the end of her temporary disability leave.

## Jurisdiction and Venue

5.      This Court has jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this District.

## The Parties

7.      Plaintiff SUSAN M. HUDEC ("Mrs. Hudec") is a former employee of The Roman Catholic Archdiocese of New York d/b/a the Archdiocese Drug and Alcohol Prevention Program.

2

8.      Defendant THE ROMAN CATHOLIC ARCHDIOCESE OF NEW

YORK (the "Archdiocese") d/b/a the Archdiocese Drug and Alcohol Prevention Program

("ADAPP") was at all relevant times a not-for-profit corporation organized under the

laws of the State of New York, with a principal place of business at 1011 First Avenue,

New York, New York 10022.  The Archdiocese was plaintiff's employer within the

meaning of 29 U.S.C. § 630(b), 42 U.S.C. § 12111(5)(A), N.Y. Executive Law § 292,

and N.Y.C. Administrative Code § 8-102(5).

9.      Defendant MICHAEL COPPOTELLI ("Mr. Coppotelli") was at all

relevant times the Associate Superintendent of Schools for the Archdiocese.  Mr.

Coppotelli was authorized by the Archdiocese to exercise, and in fact exercised,

supervisory authority over plaintiff.

### Statement of Claims

10.     Plaintiff Susan M. Hudec is an experienced educator and education

administrator with a Ph.D. in Higher Education Administration, Leadership and

Technology from New York University.  She is over the age of 40.

11.     For more than 30 years, plaintiff held senior administrative positions with

large educational institutions including Wagner College, St. John's University, St.

Joseph's College, and the City University of New York (CUNY).  Plaintiff also taught as

an Assistant Professor at CUNY and as an adjunct professor in the graduate education

programs at St. John's University and Wagner College.

12.     For a significant part of her career, plaintiff focused on the health and

well-being of students.  Between 2005 and 2015, she served as Vice President of Student

Life, Dean of Students, and Chief Student Affairs Officer at St. Joseph's College.  In

those positions, she supervised a staff of more than 140 individuals responsible for Counseling, Health Services, Campus Ministry, Behavioral Assessment, Personal Counseling & Wellness Centers, Student Discipline, and all other aspects of student life. She was also responsible for managing a multi-million dollar budget across two campuses in Brooklyn and Nassau counties.

13.     On April 9, 2015, plaintiff applied for a leadership position with the Archdiocese.  Her application included a cover letter and resume describing her education and work experience.

14.     On April 21, 2015, defendant Michael Coppotelli called plaintiff and identified himself as the Associate Superintendent of the Archdiocese.  Mr. Coppotelli holds one of the top positions in the Catholic schools system in New York City and oversees the Archdiocese Drug and Alcohol Prevention Program (ADAPP).

15.     ADAPP works with children, adults and families within the schools, parishes, and communities of the Archdiocese to provide counseling and education to prevent and intervene in the use of alcohol and other drugs.  ADAPP has offices in the Bronx, Staten Island, and Newburgh, New York.  It is funded in part by the New York State Office of Alcoholism and Substance Abuse Services (OASAS).

16.     Mr. Coppotelli encouraged plaintiff to consider a position as Executive Director of ADAPP.  He told plaintiff that the current Executive Director may be leaving at the end of the year.  He encouraged plaintiff to consider another leadership position within ADAPP until the Executive Director position opened up.

17.     On May 12, 2015, plaintiff was interviewed by Steve Virgadamo, the Associate Superintendent for Leadership at the Archdiocese of New York.  Mr.

Coppotelli was present for part of the interview.  Mr. Coppotelli continued to discuss the Executive Director position at ADAPP.   At the end of the interview, Mr. Virgadamo told plaintiff that she would be receiving a letter.

18.    On May 13, 2015, Mr. Virgadamo sent plaintiff a letter stating that she was "approved to apply for a leadership position" with the Archdiocese.

19.    On May 19, 2015, Mr. Coppotelli called plaintiff again to discuss the ADAPP Executive Director position.  He confirmed that the Executive Director would be leaving at the end of the year.  He told plaintiff that the current Clinical Director did not want the Executive Director position.

20.    Plaintiff discussed with Mr. Coppotelli the OASAS requirement that the Executive Director be certified as a Licensed Social Worker or Credentialed Alcoholism and Substance Abuse Counselor (CASAC).  Plaintiff told Mr. Coppotelli that she did not have the necessary certification.  Mr. Coppotelli told plaintiff to take the courses she would need and to sit for the CASAC exam to obtain the certification.

21.    Mr. Coppotelli told plaintiff that an interim Executive Director could be named while she obtained the necessary certification.

22.    Over the next five months, Mr. Coppotelli recruited plaintiff for the ADAPP Executive Director position.  Mr. Coppotelli sent plaintiff text messages confirming that the Executive Director position would be open at the end of the year.  He offered plaintiff tickets to Pope Francis' visit to New York City.  He also set up meetings with the retiring Executive Director and the Clinical Director to discuss the Executive Director position.

23.     In September, 2015, Mr. Coppotelli told plaintiff that the Clinical Director would be named Interim Executive Director when the current Executive Director left, but that the Clinical Director did not want the position on a permanent basis.  He encouraged plaintiff to take a position as Operations Director/Program Manager of ADAPP with the understanding that she would be named Executive Director once she completed the necessary certification process.

24.     In early October, 2015, plaintiff received an email formally offering her the position of ADAPP Operations/Program Manager.  The proposed start date was October 19, 2015.

25.     At the time plaintiff was offered this position, she was under consideration for a number of other leadership positions at large institutions.

26.     In reliance on Mr. Coppotelli's representations that she would work in a leadership position and that she would be named Executive Director once her certification was final, plaintiff withdrew her name from consideration for the other positions, started the coursework necessary to obtain CASAC certification at her own expense, and accepted the offer to be the Operations Director/Program Manager of ADAPP.

27.     Plaintiff began work at ADAPP on October 19, 2015.

28.     Plaintiff worked primarily in the Bronx office and on a few occasions in the Staten Island office.  Plaintiff also traveled as needed to the Newburgh office and to OASAS meetings.  After leaving work, plaintiff went to the College of Staten Island in the evenings to complete the courses required for CASAC certification.

29.     During the course of plaintiff's work in the ADAPP offices, it became known to Mr. Coppotelli and other managers that plaintiff has multiple sclerosis ("MS"). On several occasions, co-workers in the office commented about plaintiff's medical condition, including by asking whether plaintiff kept the lights low in her office due to MS.

30.     On December 7, 2015, plaintiff learned that Mr. Coppotelli decided to hire someone else for the Executive Director position because of her age and medical condition.

31.     That morning, plaintiff heard the Executive Director and Clinical Director talking on a speakerphone with Mr. Coppotelli about a new hire for the Executive Director position.  When asked what would happen with plaintiff, Mr. Coppotelli asked, "Is the door closed?"  Mr. Coppotelli then told the Executive Director and Clinical Director, "We do not know where Susan will land after this.  Frankly, we are not too sure of what her shelf life is anyway."

32.     After the other managers finished speaking with Mr. Coppotelli, plaintiff met with the Executive Director and Clinical Director in the Executive Director's office. Plaintiff told them that she heard what Mr. Coppotelli said on the phone.  They admitted that Mr. Coppotelli referred to plaintiff's "shelf life" as the reason for hiring someone else in the Executive Director position.

33.     The Executive Director and Clinical Director told plaintiff that Briana Pechin was being hired for the Executive Director position.

34.     Ms. Pechin was not qualified for the Executive Director position.

35.     Ms. Pechin did not meet the OASAS minimum requirements for the Executive Director position.

36.     Ms. Pechin did not have 350 hours of education and training related to chemical dependence counseling.

37.     Ms. Pechin did not have 6,000 hours of supervised, full-time equivalent experience in an approved work setting as a provider or supervisor of direct patient services.

38.     Ms. Pechin lacked the necessary credentials for the Executive Director position.

39.     Ms. Pechin was not a Credentialed Prevention Professional (CPP).

40.     Ms. Pechin was not a Credentialed Prevention Specialist (CPS).

41.     Ms. Pechin was not a licensed, certified, or credentialed prevention professional.

42.     Ms. Pechin did not have prior clinical supervision experience.

43.     Ms. Pechin did not have a Master's degree in a mental health field.

44.     Ms. Pechin did not have a mental health degree.

45.     Ms. Pechin did not have a mental health background.

46.     Ms. Pechin did not have a Ph.D.

47.     Ms. Pechin was 16 years younger than plaintiff.

48.     The Archdiocese asked OASAS to make an exception for Ms. Pechin that would allow her to serve as Executive Director.

49.     The Archdiocese did not ask OASAS to make an exception for plaintiff that would allow her to serve as Executive Director.

50.     The Executive Director told plaintiff that Ms. Pechin had already been turned down twice by OASAS for the Executive Director position, and that she and the Clinical Director were not happy with Ms. Pechin's selection as Executive Director.

51.     Plaintiff told the Executive Director and Clinical Director that she was very upset by Mr. Coppotelli's comments.

52.     Plaintiff told Mr. Coppotelli that his comment about her "shelf life" was discriminatory.  Mr. Coppotelli admitted making the comment about plaintiff's "shelf life."

53.     OASAS found Ms. Pechin not qualified for the Executive Director position and refused to grant an exception.

54.     On December 15, 2015, the Executive Director told plaintiff that the Archdiocese was creating a new position for Ms. Pechin as Chief Operating Officer (COO).  The COO position would include plaintiff's current job responsibilities.

55.     On December 23, 2015, ADAPP created the COO position with plaintiff's prior job responsibilities to put her in charge of ADAPP without complying with OASAS requirements.  Shortly thereafter, Ms. Pechin was hired as COO of ADAPP.

56.     The Clinical Director asked Mr. Coppotelli what plaintiff's role would be now that Ms. Pechin was taking over her job responsibilities.  Mr. Coppotelli responded that plaintiff would be Ms. Pechin's assistant.

57.      Plaintiff was denied the positions offered to Ms. Pechin because of plaintiff's age and medical condition.

58.     Plaintiff was demoted after complaining of discrimination.

59.     Defendants' conduct caused plaintiff to suffer a high level of stress and humiliation that made it impossible for plaintiff to continue working at ADAPP.

60.     Plaintiff applied for and accepted a position with another employer at a lower rate of compensation than she received at ADAPP.

61.     On January 28, 2016, plaintiff filed a charge of age and disability discrimination and retaliation with the U.S. Equal Employment Opportunity Commission (EEOC).

62.     On June 27, 2016, plaintiff received a right to sue letter from the EEOC.

**FIRST CLAIM FOR RELIEF AGAINST**
**DEFENDANT ARCHDIOCESE**
**FOR DISCRIMINATION IN VIOLATION OF THE ADEA**

63.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 62 above as if fully restated herein.

64.     Defendant Archdiocese discriminated against plaintiff based on her age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621, *et seq*.

65.     The stated reasons for the defendant's conduct were not the true reasons, but instead were pretext to hide the defendant's discriminatory animus.

**SECOND CLAIM FOR RELIEF AGAINST**
**DEFENDANT ARCHDIOCESE**
**FOR RETALIATION IN VIOLATION OF THE ADEA**

66.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 65 above as if fully restated herein.

67.     The conduct of defendant Archdiocese constitutes retaliation against the plaintiff because she engaged in activities protected by the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621, *et seq.*

68.     The stated reasons for the defendant's conduct were not the true reasons, but instead were pretext to hide the defendant's retaliatory animus.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT ARCHDIOCESE FOR DISCRIMINATION IN VIOLATION OF THE ADA

69.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 68 above as if fully restated herein.

70.     Defendant Archdiocese discriminated against plaintiff based on her disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112, *et seq*.

71.     The stated reasons for the defendant's conduct were not the true reasons, but instead were pretext to hide the defendant's discriminatory animus.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT ARCHDIOCESE FOR RETALIATION IN VIOLATION OF THE ADA

72.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 71 above as if fully restated herein.

73.     The conduct of defendant Archdiocese constitutes retaliation against the plaintiff because she engaged in activities protected by the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112, *et seq*.

74.     The stated reasons for the defendant's conduct were not the true reasons, but instead were pretext to hide the defendant's retaliatory animus

## FIFTH CLAIM FOR RELIEF
## ALL DEFENDANTS FOR DISCRIMINATION IN VIOLATION
## OF THE NEW YORK STATE HUMAN RIGHTS LAW

75.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 74 above as if fully restated herein.

76.     The defendants' conduct constitutes discrimination based on age and disability in violation of the New York State Human Rights Law.

77.     Defendant Michael Coppotelli actually participated in the discriminatory conduct.

78.     The stated reasons for the defendants' conduct were not the true reasons, but instead were pretext to hide the defendants' discriminatory animus.

## SIXTH CLAIM FOR RELIEF AGAINST
## ALL DEFENDANTS FOR RETALIATION IN VIOLATION
## OF THE NEW YORK STATE HUMAN RIGHTS LAW

79.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 78 above as if fully restated herein.

80.     The defendants' conduct constitutes retaliation against plaintiff because she engaged in activities protected by the New York State Human Rights Law.

81.     Defendant Michael Coppotelli actually participated in the retaliatory conduct.

82.     The stated reasons for the defendants' conduct were not the true reasons, but instead were pretext to hide the defendants' retaliatory animus.

**SEVENTH CLAIM FOR RELIEF AGAINST**
**ALL DEFENDANTS FOR DISCRIMINATION IN VIOLATION**
**OF THE NEW YORK CITY HUMAN RIGHTS LAW**

83.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 72 above as if fully restated herein.

84.    The defendants' conduct constitutes discrimination based on age and disability in violation of the New York City Human Rights Law.

85.    Defendant Michael Coppotelli actually participated in the discriminatory conduct.

86.    The stated reasons for the defendants' conduct were not the true reasons, but instead were pretext to hide the defendants' discriminatory animus.

**EIGHTH CLAIM FOR RELIEF AGAINST**
**ALL DEFENDANTS FOR RETALIATION IN VIOLATION**
**OF THE NEW YORK CITY HUMAN RIGHTS LAW**

87.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 86 above as if fully restated herein.

88.    The defendants' conduct constitutes retaliation against the plaintiff because she engaged in activities protected by the New York City Human Rights Law.

89.    Defendant Michael Coppotelli actually participated in the retaliatory conduct.

90.    The stated reasons for the defendants' conduct were not the true reasons, but instead were pretext to hide the defendants' retaliatory animus.

### NINTH CLAIM FOR RELIEF AGAINST
### ALL DEFENDANTS FOR
### PROMISSORY ESTOPPEL

91.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 90 above as if fully restated herein.

92.     Defendants made a clear and unambiguous promise to plaintiff that she would be given a leadership position with ADAPP if she turned down other job opportunities.

93.     Defendants made a clear and unambiguous promise to plaintiff that she would be given the position of Executive Director of ADAPP if she turned down other job opportunities, completed the courses to obtain the necessary certification, and accepted an interim position as a manager at ADAPP.

94.     Plaintiff substantially complied with defendants' conditions.

95.     Plaintiff reasonably relied on defendants' promises.

96.     Plaintiff suffered damages as a direct and proximate result of her reliance on defendants' promises.

### **Jury Demand**

97.     Plaintiff is entitled to and demands a jury trial.

### **Prayer for Relief**

WHEREFORE plaintiff Susan M. Hudec requests judgment against all defendants, jointly and severally, awarding her: compensatory and punitive damages in amounts to be determined at trial; liquidated damages; pre- and post-judgment interest; reasonable attorneys' fees, expert fees, and the costs of this action as authorized by 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b), 42 U.S.C. § 12205, N.Y. Exec. Law § 297.10,

and N.Y.C. Admin. Code § 8-502; an injunction prohibiting each defendant from

discriminating or retaliating against plaintiff in the future; and such other and further

relief as this Court deems just and proper.

Dated: New York, New York
      September 23, 2016

THE HOWLEY LAW FIRM P.C.

By: _____
    John Howley [JH9764]
    *Attorneys for Plaintiff*
    350 Fifth Avenue, 59th Floor
    New York, New York  10118
    (212) 601-2728